

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 6, 2021

<u>BY ECF</u>

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Squaref
New York, New York 10007

     Re:    ***United States v. Hiram Collazo*, 17 Cr. 251 (PGG)**

Dear Judge Gardephe:

     The Government writes to oppose defendant Hiram Collazo's second motion, pro se, seeking compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Second Motion" or "Sec. Mot."). (ECF No. 345). The defendant is a relatively healthy, 23-year old who, until recently, was serving his sentence at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. He was recently transferred to the Allenwood Medium Security Facility, in White Deer Pennsylvania, in connection with his placement in the Residential Drug Abuse Program ("RDAP"). As discussed in more detail below, the Government respectfully submits that the defendant's motion should be denied because he declined the Covid-19 vaccine when it was offered to him in February 2021; he has served less than half his sentence; he presents a danger to the community, and because no other intervening event or circumstance warrants disturbing the prior consideration of the factors relevant to sentencing set forth in 18 U.S.C. § 3553(a). Accordingly, the defendant's motion should be denied.

I.    **Background**

    A.  ***Criminal Conduct***

     As detailed in the Presentence Investigation Report ("PSR"), and as set forth in more detail in the Government's opposition to the defendant's first motion for compassionate release (ECF No. 291), the defendant was a member of the "Moshulu Money Over Bitches" ("MMOB"), a drug crew that engaged in narcotics trafficking in or around the Bronx and elsewhere. Between in or around July 2016 and in or around April 2017, the defendants worked together to ensure that MMOB controlled the sale of narcotics on Gates Place and Knox Place between Moshulu Parkway, West Gun Hill Road, and Jerome Avenue in the Bronx. MMOB sold chiefly crack cocaine, but also cocaine, marijuana, and prescription opioids within the territory it controlled.

Hon. Paul. G. Gardephe
August 6, 2021
Page 2

The defendant was a lower tier, albeit highly trusted, member of the conspiracy. He typically served customers at the direction of MMOB's leader, Joshua Perez, or his brother, Javier Collazo, who served as Perez's chief lieutenant. In addition to selling crack in retail quantities, Hiram Collazo personally coordinated and delivered 20 grams of crack cocaine to an undercover law enforcement officer on behalf of his brother, Javier Collazo. Hiram Collazo also worked with his brother to identify and develop new sources of prescription opiates to sell.

### B. *Procedural History*

On September 26, 2018, the defendant pled guilty to the lesser included offense of Count One of the Indictment, conspiring to possess 28 grams and more of crack cocaine, in violation of Title 21, United States Code, Section 846 and 841(b)(1)(B), before United States Magistrate Judge Stewart D. Aaron. (ECF No. 176). After his plea, the defendant continued on bail pending this Court's acceptance of his plea. This Court accepted the defendant's plea on November 2, 2018. (ECF No. 184). On November 8, 2018, this Court convened a bond hearing, at which time the Court remanded the defendant for failing to comply with the terms of his bond. (ECF Nos. 192, 204).

On September 10, 2019, this Court sentenced the defendant to 70 months' imprisonment and four years of supervised release, which was below the defendant's stipulated Guidelines range of 78 to 97 months' imprisonment. (ECF Nos. 260, 272).

The defendant is currently in the custody of the Bureau of Prisons ("BOP"), housed at Allenwood Medium Security Facility while enrolled in BOP's RDAP program. His anticipated release date is January 3, 2024, without good time credit.[1] As the Court is aware, shortly after he

---

[1] Inmates in the RDAP program are ineligible for a nine-month reduction in sentence if their criminal history includes a serious violent felony. In the Second Motion, Collazo indicates that he has been denied the nine-month reduction of sentence owing to his prior conviction for assault with intent to cause serious bodily injury and that he is appealing the denial of early release through BOP. It is unclear whether Collazo seeks relief from this Court with respect to BOP's denial of early release pursuant to RDAP, however, any application for relief from this determination at this time and from this Court would be unavailing. *First,* it would be premature because Collazo has not yet exhausted his administrative remedies; the appeal to BOP has not yet been adjudicated. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). *Second,* even if Collazo had exhausted his remedies, this Court would not have jurisdiction because such a challenge to the execution of his sentence, which must be taken pursuant to 28 U.S.C. § 2241, would have to be directed to the district in which the facility is located; Allenwood Medium is in the Middle District of Pennsylvania. *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006). *Finally*, any such a challenge would be barred by the plea agreement, in which the defendant agreed not to appeal or seek modification to any sentence within or below his stipulated Guidelines range, which is the case here. *Martinez-Castillo v. United States*, 2019 WL 3451129, *2 (S.D.N.Y. July 30, 2019) (barring challenge to BOP determination regarding eligibility for RDAP based on voluntary waiver of challenges to sentence within or below stipulated Guidelines range in the plea agreement) (Román, J.).

Hon. Paul. G. Gardephe
August 6, 2021
Page 3

was taken into custody, the defendant sustained a disciplinary infraction for possession of contraband, a cellphone at the MDC. (*See* ECF No. 291, Ex. 1).

### C. *Defendant's First Motion for Compassionate Release*

On May 12, 2020, the defendant's first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) was docketed. (ECF No. 288). Therein, Collazo asserted that the conditions of the Covid-19 pandemic warranted compassionate release. He cited no medical conditions that left him particularly vulnerable, nor did he exhaust his administrative remedies by first requesting relief from the Warden of the MDC. On May 22, 2020, this Court denied that motion on the grounds that Collazo had not exhausted his administrative remedies and that his motion would, in any event, have failed on the merits because he did not present extraordinary or compelling reasons. This Court also determined that the defendant presented a danger to the community based on his criminal conduct (selling significant quantities of crack cocaine), as well as his prior conviction for a violent assault, stabbing a victim in the chest. (ECF No. 292).

### D.  The Defendant's Second Motion for Compassionate Release

The defendant filed this Motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), on or about July 23, 2021. Therein he states that he suffers from kidney stones, "scarred lungs" from marijuana abuse, risk of glaucoma, fluctuations in his weight, and "borderline diabet[es]." (*See* Sec. Mot. at 8). He also notes that, if released, he would live with his mother and siblings at his prior residential address and seek a commercial driver's license to obtain work as a truck driver. He also points to his prior compliance with the terms of his release on bond prior to his sentencing. *Id.*

The defendant requested compassionate release from the Warden of the MDC, which was denied on or about January 25, 2021. (*See* ECF No. 345 at 22).

The defendant's medical records from BOP, attached hereto as Exhibit 1, support some, but not all, of his claimed medical conditions.[2] (*See generally*, Ex. 1 at 45). He has suffered from kidney stones, for which he has received treatment. *Id.* He was diagnosed with severe cannabis abuse as a mental health disorder, but not "scarred lungs". (*Compare* Ex. 1 at 45 "cannabis use disorder, DSM-IV" *with* 34 ("Lung Clear: Yes")). The defendant also has no diagnoses of diabetes, borderline or otherwise, nor any fluctuation in weight. (*See e.g.,* Ex. 1 at 26, 55 "Diabetes: denied"). The defendant has been identified for risk of glaucoma, for which he is receiving treatment. (*See* Ex. 1 at 45). None of these conditions impairs his ability to function in the facility.

---

[2] Notwithstanding the well-established presumption of open access, *see United States v. Amodeo*, 71 F.3d 1044, 1048-50 (2d Cir. 1995), the Government respectfully requests permission, in order to protect the defendant's privacy interests, to file Exhibit 1 under seal. *See generally* SDNY Electronic Case Filing Rules & Instructions § 21.4 (urging parties to exercise "[c]aution" when filing documents that contain, inter alia, "[m]edical records, treatment and diagnosis").

Hon. Paul. G. Gardephe
August 6, 2021
Page 4

Although Collazo does not claim that he is overweight or suffers from obesity, in his Second Motion he cites to this Court's order granting compassionate release for his co-defendant, Kevin Mieses. Mieses satisfied the extraordinary and compelling reasons standard, in the context of the global Covid-19 pandemic, because he suffered from obesity. This Court ultimately granted Mieses's motion after consideration of his offense conduct and the 3553(a) factors. (*See* ECF No. 328). Collazo's medical records reveal that he weighs 190 pounds and is 5'9" tall, which results in a body mass index ("BMI") of 28.1. According to the CDC's most recent guidance, a BMI of 28.1 qualifies as "overweight" and being "overweight" by this definition "can make [one] more likely to get severely ill from COVID-19. The risk of severe COVID-19 illness increases sharply with elevated BMI." (*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 6, 2021)).

### E. *BOP Response to Covid-19*

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations. Those efforts continue and are described in detail in BOP's "action plan." (*See* www.bop.gov/coronavirus/ (last visited August 6, 2021)).

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences. This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period. These strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected and some may succumb, just as in the population at large. But it is notable that the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

At the Allenwood Medium Security Facility, where Collazo is presently housed, the facility currently has 1162 inmates and zero reported infections among staff or inmates. (*See* www.bop.gov/coronavirus (last visited August 6, 2021*).

BOP has also begun offering the Covid-19 vaccine to inmates in federal facilities, including at Allenwood. As noted in the defendant's medical records, he was offered the Moderna vaccine on or about February 20, 2021 and refused it. (Ex. 1 at 53).

Hon. Paul. G. Gardephe
August 6, 2021
Page 5

## II.    The Defendant's Second Motion for Compassionate Release Should Be Denied on the Merits

Although the defendant has exhausted his administrative remedies and has one medical condition that may leave him at risk of a severe Covid-19 infection, he declined a Covid-19 vaccine when offered. Based on these facts, many courts in this district and elsewhere have held that a defendant cannot establish extraordinary and compelling reasons based on a medical condition. Moreover, the defendant has served just 31 months of a 70-month sentence and the Section 3553(a) factors do not otherwise weigh in his favor. Accordingly, this Court should deny Collazo's Second Motion for compassionate release.

### A.  Applicable Law

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). In one such circumstance, a court may "reduce [a] term of imprisonment . . . after considering the factors set forth in [S]ection 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) also requires that "such a reduction [be] consistent with applicable policy statements issued by the Sentencing Commission." The Second Circuit recently held, however, that U.S.S.G. § 1B1.13—the policy statement "applicable" to compassionate release motions brought by the Director of the Bureau of Prisons—is not "applicable" where, as here, the motion is brought by the defendant. *United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir 2020). After *Brooker*, district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them" without being constrained by the Sentencing Guidelines. Id. at 237.

The "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant." *United States v. Madoff*, 465 F.Supp.3d 343, 349 (S.D.N.Y. 2020) (emphasis original). Prior to reducing a defendant's term of imprisonment under Section 3582(c)(1)(A), the district court must consider the factors set forth in Section 3553(a), which include, inter alia, "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities." *United States v. Roney*, 833 F.App'x 850, 852 (2d Cir. 2020) (citing 18 U.S.C.§ 3553(a)).

As the proponent of the motion, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist under the above criteria to justify early release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

Hon. Paul. G. Gardephe
August 6, 2021
Page 6

### B. Discussion

The defendant cannot satisfy the requirements of § 3582(c)(1)(A), as amended by the First Step Act, and the Section 3553(a) factors similarly weigh against his release. Accordingly, the defendant's motion should be denied on the merits.

As this Court recognized when it denied the defendant's first motion for compassionate release, the fact of the global pandemic Covid-19 alone does not warrant release. (ECF No. 292). Here, the only condition that potentially constitutes an extraordinary and compelling reason under the statute is the fact that Collazo is overweight, which the CDC recognizes may leave individuals at greater risk of more severe outcomes from a Covid-19 infection. Here, however, Collazo was offered the opportunity to mitigate that risk when he was offered the Moderna vaccine in February 2021. He declined. Nothing in Collazo's medical records suggests that the vaccine was contraindicated; rather, the defendant appears to have declined *all* vaccines that were offered to him, including those for measles, mumps, and rubella ("MMR") and the vaccine for tetanus and diptheria ("DTap"). (*See* Ex. 1 at 53).

When a defendant seeks compassionate release for medical reasons and refuses a Covid-19 vaccine, "[i]n such instances, courts in this district and elsewhere have nearly uniformly denied compassionate release sought for medical reasons." *United States v. Robinson*, 2021 WL 1565663, at *2 (S.D.N.Y. 17 Cr. 611-7) (Torres, J.). "Courts in this District have concluded that when a defendant refuses the risk-mitigation measure of a Covid-19 vaccination, that choice weighs against an application for release." *United States v. Deleston*, 2021 WL 1731779, *2 (May 3, 2021) (Castel, J.). In particular, courts deny release when, as here, a defendant's sole underlying medical condition is obesity. *See, e.g., United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (for defendant with obesity, "'[i]n declining vaccination ... [Defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction.'") (quoting *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021)). *See also, United States v. Bullock*, 2021 WL 1550424, at *1 (S.D.N.Y. Apr. 20, 2021) (defendant "cannot satisfy his burden of showing that relief is warranted based on the fact that he was offered, and he refused, a COVID-19 vaccine.") (Furman, J.); *United States v. Bryant*, 2021 WL 738838, at *2 (S.D.N.Y. Feb. 24, 2021) (defendant's "refusal to accept a risk-mitigating measure, even one with a period of delay in its efficacy, is relevant to whether the risk of infection he faces in the MDC is extraordinary and militates against finding that the degree of risk compels release.") (Swain, J.); *United States v. Lobo*, 2021 WL 603267, at *3 (S.D.N.Y. Feb. 12, 2021) (defendant's vaccine refusal weighs against finding extraordinary and compelling circumstances) (Schofield, J.).

In addition, the BOP has made extensive efforts to respond to the threat of COVID-19. Notwithstanding the defendant's unsupported claim regarding the use of the showers at the facility by Covid-positive inmates and the rest of the population, the Allenwood Medium facility currently has zero Covid infections among inmates or staff and vaccinations are well underway.

Not only has Collazo failed to establish extraordinary and compelling reasons warranting release on this record, but the Section 3553(a) sentencing factors also weigh against his release. The

Hon. Paul G. Gardephe
August 6, 2021
Page 7

defendant has served just 31 months of his 70-month sentence.  Moreover, this Court recognized when it denied the defendant's first motion for compassionate release that the defendant presents a danger to community.  He has a serious prior conviction for assault, in which he stabbed a victim in the chest with a kitchen knife.  The offense conduct underlying his convictions was also dangerous:  selling significant quantities of crack cocaine and sourcing and selling prescription opioids, both of which do tremendous damage to communities in this district and nationwide.  To release Collazo now would not reflect the seriousness of the offense, would not adequately deter Collazo, and would not protect the community.  *United States v. Martin*, 18 Cr. 834 (PAE) (Apr. 10, 2020) (ECF No. 465 at 8) (denying compassionate release for gang member who had "served just 16 months of a 66-month term of incarceration").  In short, nothing in the record warrants disturbing this Court's prior assessment of the Section 3553(a) factors, which resulted in a sentence of 70 months' imprisonment.

For all the foregoing reasons, the defendant's second motion for compassionate release should be denied.

Respectfully,

___/s/_____
Jilan J. Kamal
Assistant United States Attorney
(212) 637-2192

MEMO ENDORSEMENT

This is Defendant Hiram Collazo's second motion for compassionate release.  On September 10, 2019, this Court sentenced Collazo to 70 months' imprisonment, which represented a modest downward variance from the Sentencing Guidelines range of 78 to 97 months' imprisonment.  (PSR ¶ 73; Judgment (Dkt. No. 272) at 2)  On May 12, 2020, Collazo moved for compassionate release (Dkt. No. 288), which the Government opposed.  (Dkt. No. 291)

On May 22, 2020, this Court denied Collazo's motion for release to home confinement and compassionate release, as Collazo had neither exhausted his administrative remedies nor demonstrated any reason justifying his release.  The Court noted that Collazo was 22 years old and had no "medical conditions that make him particularly vulnerable to the COVID-19 virus."  The Court also found that Collazo presents a danger to the community because of the nature of the instant conviction, in which he was held responsible for distributing 540 grams of crack cocaine.  Collazo also has a conviction for a serious assault, in which he stabbed the victim in the chest.  (May 22, 2020 Order (Dkt. No. 292) at 11)

Collazo has again moved, pro se, for compassionate release under 18 U.S.C. § 3582(c)(1)(A)  (Collazo Mot. (Dkt. No. 345) at 3)  He argues that extraordinary and compelling reasons warrant his release because his medical conditions – "kidney stones, high risk glaucoma, . . . scarred lungs from long term marijuana smoking, . . . borderline diabet[es]," and weight fluctuations – heighten his risk of contracting COVID-19.  (Id. at 8)

The Government opposes Collazo's motion, noting that he "declined the Covid-19 vaccine when it was offered to him in February 2021."  (Dkt. No. 358 at 1, 6; Ex. 1 at 53)  "[C]ourts in this district and elsewhere have nearly uniformly denied compassionate release sought for medical reasons [when] . . . [the defendant] refused the COVID-19 vaccine."  United States v. Robinson, 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021); see also United States v. Bullock, No. 18-CR-528 (JMF), 2021 WL 1550424, at *1 (S.D.N.Y. Apr. 20, 2021) ("[Defendant] cannot satisfy his burden of showing that relief is warranted based on the fact that he was offered, and he refused, a COVID-19 vaccine."); United States v. Deleston, No. 15-CR-113 (PKC), 2021 WL 1731779, at *2 (S.D.N.Y. May 3, 2021) ("Courts in this District have concluded that when a defendant refuses the risk-mitigation measure of a Covid-19 vaccination, that choice weighs against an application for release.").  Moreover, the intervening sixteen months have not changed this Court's determination that Collazo presents a danger to the community.  Accordingly, Collazo's application for compassionate release is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 345), and to mail a copy of this memo endorsement to Defendant.

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

September 13, 2021